UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------

YING LI, *by Robert J. Musso, Chapter 7 Bankruptcy Trustee,*

                      Plaintiff,

            – against –

MULTICULTURAL RADIO BROADCASTING, INC.,

                 Defendant.

--------

**OPINION & ORDER**

22 Civ. 572 (ER)

Ramos, D.J.:

       Ying Li, by Robert J. Musso as trustee of her estate, brought this action against her former employer, Multicultural Radio Broadcasting, Inc. ("MRBI"), on January 21, 2022, alleging violations of the Fair Labor Standards Act and the New York Labor Law.  Doc. 1. Before the Court is MRBI's motion to dismiss for lack of subject matter jurisdiction.  Doc. 13. For the reasons set forth below, the motion is DENIED.

## I.     BACKGROUND & PROCEDURAL HISTORY[1]

       MRBI is media company, based in New York City that caters to the Asian American community.  ¶ 12.  Li was employed by MRBI from January 7, 2013, to January 4, 2019, as a program director, a role which involved "collect[ing and] and organiz[ing] . . . information that [was] . . . public."[2]  ¶¶ 13–14.  During her employment, Li received positive performance

--------

[1] The following facts are based on the allegations in the Complaint, which the Court accepts as true for purposes of the instant motion.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  Unless otherwise noted, citations to "¶ __" refer to the Complaint, Doc. 1.

[2] There is a discrepancy in the complaint regarding whether Li began working for MRBI in 2013 or in 2015. *Compare* ¶ 4 ("Li worked for [MRBI] as Program Director from 2015 to January 4, 2019, when she was fired.")

reviews and was never subjected to disciplinary action.  ¶ 32.  Her regular work schedule was Monday to Friday from 5:30 a.m. to 3:00 p.m., totaling 47.5 hours worked per week.  ¶¶ 16–17. However, on average, Li regularly worked an additional three hours per week, attending meetings and weekend events.  ¶¶ 19–20.  MRBI paid Li an annual, fixed salary, which did not increase if she worked additional hours.  ¶ 23.

According to Li, MRBI did not pay her overtime premium pay for any of the weeks that she worked more than 40 hours.  ¶ 24.  At various times throughout her employment, Li complained to Sherman Ngan, the general manager of MRBI, about the lack of overtime pay, most recently in September 2018.  ¶¶ 25, 27.  It was well known throughout MRBI that Ngan did not like his decisions to be challenged and that he retaliated against those who complained about company policy.  ¶ 26.

On January 4, 2019, MRBI terminated Li without providing any legitimate reason for doing so.  ¶¶ 27, 30.  Li believes that she was terminated for complaining about not being paid overtime.  ¶¶ 29–31.

The following month, on February 16, 2019, Li, who was unable to secure another job, ¶ 33, filed a voluntary petition for relief pursuant to Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court"), commencing a Chapter 7 proceeding entitled *In re Ying Li*, Case No. 19-40928 (ESS) (the "Bankruptcy Case").[3]  ¶ 1; *see also* Doc. 15-2 at 2–9.  Robert J. Musso was appointed as Chapter 7 Trustee of Li's estate.  ¶ 2; *see also* Doc. 15-3 at 2–3.

---

*with* ¶ 13 (MRBI employed . . . Li as Program Director [from] January 7, 2013 to January 4, 2019, when it fired her.").

[3] Attached to Douglas J. Pick's declaration in support of MRBI's motion to dismiss, Doc. 15, are various documents relating to the Bankruptcy Proceeding, including:  (1) Li's voluntary petition, including the original schedules of her assets and liabilities, Doc. 15-2; (2) the docket report, Doc. 15-3; (3) the amended schedules of her assets and liabilities, Doc. 15-6; and (4) the second amended schedules of her assets and liabilities, Doc. 15-7.  The Court takes

Attached to her voluntary bankruptcy petition, Li listed her assets and liabilities under Schedules A/B, as well as the property she claimed as exempt under Schedule C.  *See* Doc. 15-2 at 11–22 (the "Original Schedules").  She also filed a sworn declaration that her representations in the Original Schedules were true and correct.  *Id.* at 10.  The Original Schedules did not disclose the existence of the claims asserted herein against MRBI as assets of her estate.  *Id.*  On March 25, 2019, the Bankruptcy Court held the initial meeting of creditors, pursuant to § 341 of the Bankruptcy Code.  Doc. 15-3 at 3.  On March 27, 2019, Musso filed a "Chapter 7 Trustee's Report of No Distribution."  *Id.*  And on July 18, 2019, the Bankruptcy Court issued a final decree, closing the Bankruptcy Case.  *Id.* at 4.

One month later, on August 14, 2020, Li, on her own behalf, filed a separate action in this District before Judge Mary Kay Vyskocil—captioned *Ying Li v. Multicultural Radio Broadcasting, Inc.*, No. 20-cv-6465 (the "Prior Action")—bringing the identical claims alleged here.  *See* the Complaint in the Prior Action, No. 20 Civ. 6465, Doc. 5.  On March 23, 2021, counsel for MRBI wrote to the Court, advising that it intended to move to dismiss the action for lack of subject matter jurisdiction.  No. 20-cv-6465, Doc. 23.  Counsel for MRBI explained that because Li's claims against MRBI accrued between January 7, 2013, and January 4, 2019— before she filed her bankruptcy petition on February 16, 2019—they belonged to her *estate*, and Li thus lacked standing to prosecute the action on her own behalf.  *Id.*  MRBI further noted that although Li failed to disclose her legal claims against MRBI in the Original Schedules, "[i]n the bankruptcy context, judicial estoppel is frequently invoked to prevent a party who fails to disclose a claim in bankruptcy proceedings from asserting that claim after discharge."  *Id.* at 3

---

judicial notice of these documents as incorporated by reference in the complaint.  *See ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (noting that the court "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference … and documents possessed or known to the plaintiff and upon which it relied in bringing the suit").

(marks omitted) (quoting *Isnady v. Village of Walden*, No. 7:18 Civ. 2662 (NSR), 2019 WL 3252753, at *6 (S.D.N.Y. July 1, 2019)).  Prior to filing a motion to dismiss, on March 25, 2021, MRBI entered into a stipulation of voluntary discontinuance with Li, dismissing the Prior Action without prejudice.  No. 20-cv-6465, Doc. 26.

Five months later, on August 25, 2021, Li successfully moved to reopen the Bankruptcy Case.  Doc. 15-3 at 5.  Two weeks thereafter, on September 8, 2021, she amended the Original Schedules to reflect her legal claims against MRBI (the "Labor Law Claims") as one of her financial assets.  *See* Doc. 15-6 at 9 (the "First Amended Schedules") (listing law suit against former employer, MRBI, under Amended Schedule A/B).  Under the Amended Schedule A/B, she listed the value of her Labor Law Claims as "[u]nknown."  *Id.*  Under the Amended Schedule C, Li claimed an exemption with respect to the Labor Law Claims, pursuant to New York Civil Practice Law and Rules ("C.P.L.R.") § 5205.  *Id.* at 15.  Li also listed the amount of the exemption she claimed as to the Labor Law Claims as "unknown" and their current value as "unknown," as well.[4]  *Id.*

Li, by Robert J. Musso as trustee of her Chapter 7 estate, filed this action against MRBI on January 21, 2022.  Doc. 1.  On February 25, 2022, the Court held a pre-motion conference regarding MRBI's anticipated motion to dismiss the action for lack of subject matter jurisdiction. Shortly after the pre-motion conference, on March 2, 2022, Li amended the First Amended Schedules.  *See* Doc. 15-7 (the "Second Amended Schedules").  There is only one difference between the First and Second Amended Schedules:  under the Second Amended Schedule C, Li checked a box exempting an amount equal to "100% of the fair market value, up to any

---

[4] There were no objections to the First Amended Schedules.

applicable statutory limit," with respect to the Labor Law Claims.  *See* Doc. 15-7 at 13.  She still, however, listed the exemption amount as "unknown."[5]  *Id.*

On March 18, 2022, MRBI moved to dismiss the complaint, arguing that Musso lacks standing to bring the Labor Law Claims because the Second Amended Schedules exempted them from Li's Chapter 7 estate.  Doc. 13.  The Court thereafter granted Li three extensions to file her memorandum in opposition to the motion to dismiss, the last of which set a deadline of May 20, 2022.  *See* Docs. 17; 19; 21.

On May 5, 2022, Li filed amended schedules for the third time with the Bankruptcy Court.  *See* Doc. 23 at 3–15 (the "Third Amended Schedules").  Under the Third Amended Schedule C, with respect to the Labor Law Claims, Li claimed "$0" as exempt from her estate and also removed the checkmark from the box exempting an amount equal to "100% of the fair market value[.]"  *Id.* at 15.  She further indicated that she owned "$0" of the Labor Law Claims and deleted the prior reference to CPLR § 5205.[6]  *Id.*  That same day, Li notified MRBI via email of the Third Amended Schedules and inquired whether MRBI would withdraw its motion to dismiss as moot.  *Id.* at 16–18.  But MRBI refused.

On May 20, 2022, Li filed her opposition to MRBI's motion to dismiss.  Doc. 22.  MRBI replied on May 31, 2022.  Doc. 24.

## II.    Legal Standard

Pursuant to Rule 12(b)(1), the Court must dismiss a case for lack of subject matter jurisdiction if the Court "lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)).  The party

---

[5] There were no objections to the Second Amended Schedules.

[6] Neither party has advised the Court that there have been any objections to the Third Amended Schedules.

asserting subject matter jurisdiction bears the burden of establishing that jurisdiction exists by a preponderance of the evidence. *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova*, 201 F.3d at 113). The Court accepts all material factual allegations in the complaint as true, *id.* (quoting *Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006)), but it does not presume the truthfulness of the complaint's jurisdictional allegations, *Frisone v. Pepsico, Inc.*, 369 F. Supp. 2d 464, 469–70 (S.D.N.Y. 2005) (quoting *Augienello v. Fed. Deposit Ins. Corp.*, 310 F. Supp. 2d 582, 588 (S.D.N.Y. 2004)). When evaluating a Rule 12(b)(1) motion, the Court may consider evidence outside of the pleadings to resolve the disputed jurisdictional fact issues. *Zappia Middle E. Constr. Co. Ltd. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000); *see also Morrison*, 547 F.3d at 170 (citing *Makarova*, 201 F.3d at 113). However, the Court should refrain from drawing inferences in favor of the party asserting subject matter jurisdiction on a Rule 12(b)(1) motion. *People United for Child., Inc. v. City of New York*, 108 F. Supp. 2d 275, 283 (citing *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992).

## III.    Discussion

The Bankruptcy Code provides that a "trustee stands in the shoes of the [debtor] and has standing to bring any suit that the bankrupt [debtor] could have instituted had it not petitioned for bankruptcy." *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir. 1991) (citing 11 U.S.C. §§ 541, 542). When an individual files a petition for a Chapter 7 bankruptcy, their assets, "including legal and equitable interests, become property of the bankruptcy estate." *Ibok v. Siac-Sector Inc.*, No. 05 Civ. 6584 (GBD) (GWG), 2011 WL 293757, at *3 (S.D.N.Y. Jan. 31, 2011). These assets are listed in the Schedule A/B form and "undisclosed assets automatically remain property of the estate after the [bankruptcy] case is closed." *Chartschlaa v.*

*Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008) (citing 11 § 544(c), (d)).  However, individual debtors may list exemptions for property in the Schedule C filings.  *See In re Bell*, 225 F.3d 203, 219 (2d Cir. 2000) (citing 11 U.S.C. § 522(b)).  Property may be partially exempted up to any applicable statutory limit, 11 U.S.C. § 522(d), and courts have allowed exemption amounts to be listed as "unknown."  *See In re Wick*, 276 F.3d 412, 416 (8th Cir. 2002) (where the court determined that exempting an "unknown" amount of the asset does not make it fully exempt from the bankruptcy estate).  When a debtor claims zero dollars as an exemption, courts have treated the exemption as the debtor claiming zero dollars of the asset itself which is equivalent to not claiming an exemption of the asset at all.  *See In re Forti*, 224 B.R. 323, 327 (Bankr. D. Md. 1998).

According to the Federal Rule of Bankruptcy Procedure ("F.R.B.P.") 4003(b)(1), "a party in interest may file an objection to the list of property claimed as exempt within 30 days after the meeting of creditors held under § 341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later."  Fed. R. Bankr. P. 4003(b)(1).  If no exemptions are timely filed, "the property claimed as exempt on such list is exempt" and the trustee may no longer raise objections to the filings.  11 U.S.C. § 522(l).  However, F.R.B.P. 1009(a) provides that a "list [or] schedule . . . may be amended by the debtor as a matter of course at any time before the case is closed."  Fed. R. Bankr. P. 1009(a).

Here, MRBI argues that Musso, as trustee of Li's Chapter 7 estate, lacks standing to bring this suit because Li exempted the Labor Law Claims from her estate when she filed the First Amended Schedules on September 8, 2021, and because no objections to them were ever filed.  *See* Doc. 24 at 5 ("Once the Labor Law Claims were deemed statutorily exempt, the Labor Law Claims were . . . excluded from the Chapter 7 Proceedings because § 522(l) created finality to the

7

exemption[.]").  This argument, however, is without merit, as F.R.B.P. 1009(a) permits a debtor to amend a schedule as a matter of course while the case is open, even if the trustee did not raise timely objections to the schedule.  Fed. R. Bankr. P. 1009(a); *see also In re Cash*, 319 F.App'x. 4, 5 (2d Cir. 2009) (noting that the right to amend schedules may be exercised at any time but prejudicial reliance by interested parties on the previous motion is considered in determining the allowance of the amendment).  Thus, the absence of any objections to the First Amended Schedules does *not*, as MRBI contends, render them "final[.]"[7]

Li, in accordance with F.R.B.P. 1009(a), twice more revised the Schedules:  first on March 2, 2022, and then again on May 5, 2022.  *See* Docs. 15-7; 23.  The Third Amended Schedules, as the most recent, govern the Court's determination as to whether Li's estate encompasses the Labor Law Claims brought herein.  *See Doe v. Cahill*, No. 20 Civ. 3908 (KPF), 2021 WL 3501196, at *2 (S.D.N.Y. Aug. 9, 2021) (where the court relied on the debtor's amended schedules which included the pending matter in the assets of the bankruptcy estate and determined that the trustee was not judicially estopped from bringing the claim on behalf of the bankruptcy estate).

The Third Amended Schedule C reflects that Li has not exempted the Labor Law Claims. Doc. 23 at 15.  In this Schedule C, Li has listed this lawsuit and indicated that she owns "$0" of the suit and further indicated that she is claiming "$0" of the action as exempt from the bankruptcy estate.  *Id.*  MRBI contends that the designation of "$0" in the Third Amended

---

[7] MRBI's reliance on *Taylor v. Freeland & Kronz*, 503 U.S. 638, 644 (1992) is misplaced.  That case involved a debtor who filed a Chapter 7 bankruptcy petition and claimed as exempt the proceeds she expected to receive in her discrimination lawsuit against her employer.  *Id.* at 640.  After an initial meeting of creditors, the trustee made no objection to the fact that the debtor exempted her discrimination lawsuit from the estate.  *Id.* at 640–41.  The debtor reached a settlement with her employer and then the *trustee* sued, seeking proceeds from the settlement.  *Id.* at 641. The Court determined that the trustee could not object to the exemption because he did not timely do so, pursuant to § 522(l) and F.R.B.P. 4003(b).  *Id.* at 642.  *Taylor* is not analogous to the instant case.  Critically, *Taylor* did *not* address the question of whether a voluntary bankruptcy petitioner's amended schedules are "final" if no interested parties timely object; nor did *Taylor* even involve a question of standing.

Schedule C as the current value of the claim "is immaterial since the Labor Law Claims [were] withdrawn and excluded from the bankruptcy estate." Doc. 24 at 4. Furthermore, MRBI claims the designation was "simply provided [as] an estimate to assist a trustee in evaluating the potential non-exempt value of the property" and, therefore, "[a]ny reliance thereon would be misplaced." *Id.*

To support its argument, MRBI cites to *In re Bollinger*, No. 14-14403, 2015 Bankr. LEXIS 4572 (Bankr. D. Nev. June 29, 2015). There, the debtor claimed an exemption in property but indicated the value of the property as "0.00." *Id.* at *8–9. The court determined that the Chapter 7 bankruptcy trustee could not object to this exemption after the allowable time to file such exemption had passed. *Id.* The court further reasoned that the basis for a trustee to evaluate the Chapter 7 exemptions is "controlled by the value claimed as exempt under the statutory provision asserted by the debtor." *Id.* at *12 (citing *Schwab v. Reilly*, 560 U.S. 770, 785 (2010)). Therefore, if the determining factor is the value claimed as exempt under the statutory provision asserted by the debtor and not the claimed value of the property, it would follow here that Musso had no reason to object to the Third Amended Schedule C because Li claimed that "$0" of these claims would be exempt from the bankruptcy estate and did not indicate any statute that she could have claimed an exemption under. Doc. 23 at 15. Accordingly, it is clear from this Third Amended Schedule C that Li did not intend to claim any portion of this suit as exempt and Musso had no reason to object to the Schedule C since the claims are property of the bankruptcy estate.

Moreover, MRBI argues that Li filed the Third Amended Schedules in bad faith. Doc. 24 at 2. Rule 1009(a) of the F.R.B.P. provides that an amended schedule may be filed by the debtor at any point before the close of the bankruptcy case. Fed. R. Bankr. P. 1009(a). However, "a

debtor's opportunity to amend cannot be exercised in all circumstances without regard to prejudicial reliance." *In re Cash*, 319 F.Appx. at 5.  "[C]ourts have found that creditors are prejudiced when they suffer 'actual economic loss due to the delay in filing the amendment' or when the parties 'would have taken different actions, or asserted other positions, if the exemptions had been claim[ed] earlier.'" *Gregory Funding v. Ventura*, 638 B.R. 499, 505 (Bankr. E.D.N.Y. 2022) (quoting *In re Walck*, 459 B.R. 208, 212 (Bankr. M.D. Pa. 2011)).

In *Gregory Funding* as well as the other cases relied upon by MRBI, the courts are concerned with the prejudice that the *creditors* may face if the debtor's amendment is allowed. *See Gregory Funding*, 638 B.R. at 505; *see also In re Walck*, 459 B.R. 208 (an action between the trustee and the debtor where the debtor's amendment would have prejudiced the creditors who were informed they would receive the full payment of their claim); *In re Talmo*, 185 B.R. 637, 647–48 (Bankr. S.D. Fla. 1995) (disallowing the debtor's amendment where the trustee and the creditors would have been prejudiced).  The reasoning from these cases make it clear that the prejudice the courts are concerned with is the prejudice that may be experienced by the trustee and the creditors, not a defendant corporation in a lawsuit brought by the debtor.  *Gregory Funding*, 638 B.R. at 504–05 (limiting its analysis to "whether the amendment would prejudice *creditors*") (emphasis added) (internal quotation omitted).

Here, the schedules have been altered and refiled multiple times with subtle changes to each filing.  For example, Li's Third Amended Schedule C revised the Second Amended Schedule C by changing the amount of the Labor Law Claims exemption from "unknown" to "$0."  Doc. 22 at 1–2; Doc. 23 at 15.  MRBI's claim that it has been prejudiced by such filings is unavailing since MRBI is not a party in interest to Li's estate like a creditor and trustee are. Although MRBI has expended time and legal fees in relation to this lawsuit and the Prior Action,

it has not cited any authority which would support its position that these filings and amendments rise to a level of prejudice which warrant the dismissal of this lawsuit.

Lastly, MRBI has argued that the doctrine of judicial estoppel bars this suit from being brought by Li on her own behalf.  Doc. 24 at 3–4.  "The equitable doctrine of judicial estoppel can be invoked at a court's discretion to prevent a party from 'asserting a factual position in one legal proceeding that is contrary to a position that it successfully advanced in another proceeding.'"  *Isnady*, 2019 WL 3252753 at *6 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)).  The doctrine is intended to "protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment."  *New Hampshire*, 532 U.S. at 750.  In *Isnady*, after the discharge of the plaintiff's bankruptcy case, the plaintiff filed a lawsuit against the defendants (the town and its employees) alleging systemic and continuous discrimination.  *Isnady*, 2019 WL 3252753 at *1.  The defendants filed a motion to dismiss the suit arguing that the plaintiff lacked standing to bring the action and that the doctrine of judicial estoppel barred the action because the plaintiff failed to disclose the claim as an asset of the bankruptcy estate.  *Id.* at *2.  The district court agreed with both arguments and dismissed the suit.  *Id.* at *9.  *See also Isnady v. Village of Walden*, 799 F.Appx. 91 (2d Cir. 2020) (affirming the district court's reasoning to dismiss on standing grounds but not addressing the application of judicial estoppel).  Although the court in *Isnady* invoked judicial estoppel to prevent the debtor from bringing the claim against the defendant, it is distinguishable from this case because Li reopened her bankruptcy case and amended her filings to reflect that this lawsuit is property of the bankruptcy estate.  Therefore, the doctrine of judicial estoppel does not require a dismissal of the instant action because it is Musso, the Chapter 7 Trustee, who is bringing these claims on behalf of Li, not Li herself.

Since this claim is property of the bankruptcy estate according to the most recent amended Schedule C filing, Musso, the Chapter 7 Trustee, has standing to bring this claim.  *See In re Beckford*, 729 F.App'x. 127, 128 (2d Cir. 2018) ("Only the bankruptcy trustee has standing to bring the claims owned by the bankruptcy estate.").

IV.    **CONCLUSION**

For the foregoing reasons, MRBI's motion is DENIED.  The parties are directed to appear for a telephonic initial pretrial conference on April 14, 2023 at 10:00 a.m.  The parties are directed to dial (877) 411-9748 and to enter access code 3029857#.  The Clerk of Court is respectfully directed to terminate the motion, Doc. 13.

It is SO ORDERED.

Dated:    March 21, 2023
          New York, New York

_____
          Edgardo Ramos, U.S.D.J